******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, C. J., and Clark and Prescott, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court awarding attorney's fees to the defendant, his former wife, in connection with a breach of contract action. The plaintiff claimed that the defendant had breached their separation agreement by failing to disclose that she had liquidated two annuities prior to the commencement of the dissolution proceedings. The trial court, *Hon. Gerard I. Adelman,* judge trial referee, rendered judgment for the defendant, finding that the plaintiff's action was barred by the applicable statute of limitations, that there was insufficient evidence to prove that the defendant had breached the agreement, and that neither party had failed to disclose assets. The plaintiff appealed to this court, which dismissed the appeal as moot. The defendant filed a motion for attorney's fees, seeking to recover the costs she had incurred in defending against the breach of contract action and the subsequent appeal. The trial court, *Hon. Constance L. Epstein,* judge trial referee, granted the motion, concluding that the defendant was entitled to recover attorney's fees under the bad faith exception to the American rule, and awarded attorney's fees to the defendant. On the plaintiff's appeal to this court, *held* that the trial court abused its discretion in awarding the defendant attorney's fees: the trial court's memorandum of decision made clear that, in determining that the plaintiff had acted in bad faith and did not have a colorable claim, the court relied exclusively on certain findings in Judge Adelman's memorandum of decision in the underlying breach of contract action rather than reviewing the record and making its own factual findings with the requisite degree of specificity as to the relevant issues; moreover, Judge Adelman's decision did not include sufficiently specific factual findings to support an award of attorney's fees under the bad faith exception to the American rule because it did not include any express findings that the plaintiff's contract claim lacked color or that the plaintiff knew that there was no factual basis for his claim or otherwise acted in bad faith, the court observed that the contract language was ambiguous, which suggested that the plaintiff's claim had some color, the court's findings that the defendant did not own the annuity contracts in question when she filed her financial affidavit because she had liquidated them to fund her new home and that the home was constructed with the knowledge of the plaintiff who provided significant funds for the project, including the two annuity contracts, did not equate to a finding that the plaintiff's claims were without color and that he knew there was no factual basis for his claim or otherwise acted in bad faith, and the decision was silent with respect to whether and when the plaintiff knew that the defendant had properly disclosed the amount of the liquidated annuities by including them in the value of the real estate that she disclosed on her financial affidavit; furthermore, because the defendant's motion for attorney's fees included references to specific evidence in the record and the trial court failed to review that evidence, the defendant was deprived of a full and fair opportunity to present and have the court consider evidence of the plaintiff's bad faith; accordingly, this court reversed the judgment of the trial court and remanded the case for a new hearing on the defendant's motion for attorney's fees.

Argued November 6, 2023—officially released January 30, 2024

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Hon. Gerard I. Adelman,* judge trial referee; judgment for the defendant, from which the plaintiff appealed to

this court, *DiPentima, C. J.*, and *Moll* and *Bishop, Js.*, which dismissed the appeal; thereafter, the court, *Hon. Constance L. Epstein*, judge trial referee, granted the defendant's motion for attorney's fees, from which the plaintiff appealed to this court; subsequently, the court, *Hon. Constance L. Epstein*, judge trial referee, awarded attorney's fees to the defendant, and the plaintiff filed an amended appeal. *Reversed*; *further proceedings*.

*Keith Yagaloff*, for the appellant (plaintiff).

*C. Michael Budlong*, with whom, on the brief, was *Joseph R. Brennan-Reilly*, for the appellee (defendant).

*Opinion*

CLARK, J. The plaintiff, Jean-Marc Jacques, appeals from the judgment of the trial court awarding attorney's fees to his former wife, the defendant, Muriel Jacques. On appeal, the plaintiff claims that the court erred in awarding the defendant $51,641 in attorney's fees under the bad faith exception to the American rule[1] by concluding that the underlying breach of contract action he brought against the defendant was entirely without color and brought in bad faith.[2] In particular, he claims that the court's award was not supported by the requisite factual findings that are required under the bad faith exception. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court and remand the case for a new hearing on the defendant's motion for attorney's fees.

The record reveals the following facts and procedural history. On March 26, 2009, the court, *Dyer, J.*, dissolved the parties' marriage and incorporated their separation agreement (agreement) into its judgment of dissolution. Paragraph 10 (h) of the agreement provided in relevant part: "[A]ny assets over ten thousand and 00/100 ($10,000.00) dollars in fair market value that the [defendant] owns or has an equitable interest in at the time of the dissolution which are not shown by the [defendant] on her financial affidavit, shall, upon discovery by the other party, become [the plaintiff's] property without any defense interposed by the [defendant] whatsoever as to such claims of the other party."

On May 16, 2016, the plaintiff brought the underlying breach of contract action against the defendant, alleging that she had breached the agreement by failing to disclose certain assets in accordance with paragraph 10 (h) of the agreement. Specifically, the plaintiff alleged that the defendant liquidated two annuities prior to the divorce and that those proceeds, totaling $1,153,444.78, were undisclosed assets under paragraph 10 (h) of the separation agreement. The defendant countered that "[b]ecause those liquidated annuities were used to purchase land and build the defendant's home, and that real estate was properly disclosed by the defendant, the [annuity] proceeds were not undisclosed and the defendant did not breach the parties' separation agreement." The defendant also asserted five special defenses, including that (1) the plaintiff's action "was filed beyond the six year limitation period for actions on written contracts set forth by General Statutes § 52-576"; (2) paragraph 10 (h) of the agreement "is contrary to law and/or public policy"; (3) paragraph 10 (h) of the agreement "is predicated on a provision that is unconscionable"; (4) "[t]he plaintiff's claims are barred by the equitable doctrine of unclean hands, based on the plaintiff's own bad faith conduct and/or nondisclosure of assets prior to and at the time of dissolution"; and (5) "[t]he plaintiff's cause of action is predicated

on a provision that is unenforceable on the ground of unilateral mistake.”

On June 5, 2018, following a bench trial, the court, *Hon. Gerard I. Adelman*, judge trial referee, rendered judgment in favor of the defendant, finding that the plaintiff’s action was barred by the six year statute of limitations for contract actions set forth in § 52-576 (a), there was insufficient evidence that the defendant had breached the agreement, and there had been no failure to disclose assets by either party. Judge Adelman’s memorandum of decision stated in relevant part: “[T]he court makes the following findings of fact . . .

\* \* \*

“F. The provisions of [the] agreement are, in parts, contradictory and ambiguous . . .

“H. The defendant did not own the two annuity contracts in question as of the date of her financial affidavit filed at the final hearing in that said contracts had been previously liquidated by the defendant to fund, in part, her new home . . .

“I. The funding and construction of said home was done with the knowledge of the plaintiff and he provided significant funds to the defendant for that project including, but not limited to, the two annuity contracts in question;

“J. There was no failure to disclose any assets by either party;

“K. There is insufficient evidence to make a finding as to the breach of the contract on the part of the defendant . . . .”

Additionally, the court found that, “[a]s to [the defendant’s] special defenses two through five . . . the defendant did not brief them in her posttrial brief. Accordingly, the court considers them abandoned.”

The plaintiff appealed, claiming, inter alia, that the trial court erred in concluding that his action was barred by the statute of limitations. *Jacques* v. *Jacques*, 195 Conn. App. 59, 60, 223 A.3d 90 (2019). On December 24, 2019, this court dismissed that appeal as moot, concluding that the plaintiff had failed to challenge an independent ground for the trial court’s judgment, namely, the court’s determination that the plaintiff’s breach of contract claim failed on the merits due to insufficient evidence that the defendant had breached the agreement. Id., 62.

On January 22, 2020, the defendant filed a motion for attorney’s fees, seeking to recover fees incurred by her in defending against the plaintiff’s breach of contract action and subsequent appeal. The defendant’s request for attorney’s fees was made pursuant to (1) General Statutes § 46b-62,[3] (2) the agreement, (3) Practice Book § 1-25, and (4) the court’s inherent authority. In her

motion, the defendant alleged that the plaintiff "was aware of the circumstances surrounding the [defendant's] disclosures [on her financial affidavit in regard to the liquidated annuities] and knew or should have known that no impropriety existed." She further alleged that "[t]he [plaintiff's] actions throughout this case have been acted upon in bad faith and [are] entirely without color . . . [which] warrants counsel fees to the [defendant] . . . ." On March 17, 2020, the plaintiff filed an objection to the motion for attorney's fees.

On November 5, 2021, following a hearing, the court, *Hon. Constance L. Epstein*, judge trial referee, granted the defendant's motion for attorney's fees on the basis that the defendant was entitled to recover attorney's fees under the bad faith exception to the American rule. Specifically, the court found: "In the civil court's decision on the underlying matter, Judge Adelman made specific findings. The trial court held that the two annuity contracts at issue had been liquidated prior to the divorce in order to fund the construction of [the defendant's] new home and the amounts of that liquidation were reflected in the assets reported on her financial affidavit. The trial court further found: 'The funding and construction of said home was done with the knowledge of the plaintiff . . . and he provided significant funds to the defendant for that project including, but not limited to, the two annuity contracts in question.' . . .

"As to [the defendant's] reliance on this court's 'inherent authority' to award attorney's fees, Connecticut adheres to the so-called 'American' rule, which prohibits the award of such fees to the prevailing party unless such award is premised on statutory directives or is pursuant to contract. An exception to this doctrine may be successfully invoked if the losing party has acted in bad faith and/or vexatiously or wantonly acted for oppressive reasons. *Maris* v. *McGrath*, 269 Conn. 834, 845–46 [850 A.2d 133] (2004).

"[The defendant] argues that [the plaintiff] initiated the civil action, rather than a postjudgment action on the dissolution, because [the plaintiff] could thereby avoid paying attorney's fees to his counsel, premising this argument on the belief that the civil action was brought by [the plaintiff's] counsel on a contingency fee basis. [The defendant] asserts that this substantiates her assertion that [the plaintiff] simply wanted to harass her, with no financial loss to himself. However, this court has not been presented with any evidence of the fee agreement between [the plaintiff] and his counsel in the civil matter and this contention has not been considered by this court on the issue before it.

"The 'bad faith' exception to an award of attorney's fees takes into account the necessity that courts must avoid deterring the filing of lawsuits by persons who honestly believe they have a colorable claim. *CFM of Connecticut, Inc.* v. [*Chowdhury*, 239 Conn. 375, 394–

95, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999)]. Under this directive, however, the Connecticut Supreme Court has held that the 'bad faith' exception [to] the American rule can be applied if there is a finding that the losing party's actions were baseless. Id. The frivolity of a litigant's action is evident in situations in which there is no good faith argument that can be made on the merits of the underlying action. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 255 [828 A.2d 64] (2003).

"[The plaintiff] had no colorable claim on which to premise his civil lawsuit, and the trial court so found. Indeed, the trial court pointedly decided that [the plaintiff] knew that there was no basis for his claim. Not only did [the plaintiff] not challenge the court's finding that he had no claim and that he knew it, but also, thereafter, [the plaintiff] nevertheless filed an appeal. In that appeal [the plaintiff] did not seek review of the trial court's decision on the merits. Instead, [the plaintiff] required [the defendant] to defend an action in which [the plaintiff] sought a declaratory ruling from the Appellate Court as to the interpretation of a statute—an interpretation that would not have changed anything that affected him or [the defendant], and the Appellate Court so ruled in dismissing the appeal.

"The judiciary is entrusted with the responsibility of assisting those who invoke its authority to resolve actual disputes. The dignity and solemnity of the process, essential elements thereof, should not be eroded by the use of the process to harass others, as has occurred in this case. The court grants the motion for counsel fees." (Citation omitted.)

On November 26, 2021, the plaintiff filed a motion to reconsider, arguing, inter alia, that there was no evidence in the record to support the trial court's finding that Judge Adelman concluded that the plaintiff knew there was no basis for his claim or that he had no colorable claim. The plaintiff also argued that the award was unjustified because Judge Adelman dismissed the defendant's special defense of unclean hands and made no finding of bad faith litigation. On December 28, 2021, Judge Epstein denied the motion. This appeal followed.

On March 15, 2022, the plaintiff filed a motion for articulation, requesting the court to articulate "the specific text from Judge Adelman's decision where he found that [the plaintiff] had no colorable claim on which to premise his civil lawsuit, and where he pointedly decided that [the plaintiff] knew there was no basis for his claim." The plaintiff also requested "the specific text from Judge Adelman's decision that [the] court relied on in finding the plaintiff engaged in bad faith litigation." On March 25, 2022, the court denied the motion for articulation, stating: "This court does not find the [plaintiff's] motion for articulation to be a

request for articulation at all, but instead an attempt at an argument, or perhaps reargument. . . . [T]he decision rendered by this court quite clearly recites the provisions of Judge Adelman's decision on which this court relied. . . . The motion is denied."

On September 22, 2022, following a hearing, Judge Epstein issued a memorandum of decision awarding the defendant $51,641 in attorney's fees. Subsequently, on October 5, 2022, the plaintiff amended his appeal pursuant to Practice Book § 61-9 to include the court's September 22, 2022 decision.[4]

On appeal, the plaintiff claims that the court erred in awarding the defendant attorney's fees under the bad faith exception to the American rule by concluding that the underlying breach of contract action was entirely without color and brought in bad faith. The plaintiff argues that Judge Epstein failed to make factual findings with the high degree of specificity required in order to award attorney's fees under the bad faith exception. Specifically, he argues that the court relied solely on the text of Judge Adelman's memorandum of decision, which "lacks any facts or finding[s] that could serve as the basis for [the] award of attorney's fees." We agree with the plaintiff.

We begin by setting forth the standard of review and legal principles relevant to this claim. "It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Rinfret* v. *Porter*, 173 Conn. App. 498, 507–508, 164 A.3d 812 (2017).

Connecticut "follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable [attorney's] fee from the loser. . . . That rule does not apply, however, where the opposing party has acted in bad faith. . . . It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 332 Conn. 837, 843–44, 213 A.3d 481 (2019).

"[A] litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high

hurdle. . . . To ensure . . . that fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the [bad faith] exception absent *both clear evidence* that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . *and a high degree of specificity in the factual findings* of [the] lower courts." (Emphasis in original; internal quotation marks omitted.) *Cokic* v. *Fiore Powersports, LLC*, 222 Conn. App. 216, 227, 304 A.3d 179 (2023). The burden is on the moving party to prove a lack of color and bad faith. See id., 229.

"Although this exception . . . is often referred to in shorthand as the bad faith exception, the label is somewhat of a misnomer as it encompasses both of the required findings . . . that the litigant's claims were entirely without color and that the litigant acted in bad faith." (Emphasis omitted; internal quotation marks omitted.) Id., 227. Thus, "in order to impose sanctions under the bad faith exception, the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith. . . . *The court must make these findings with a high degree of specificity . . . .*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 332 Conn. 844. Although the court need not separately indicate which factual findings relate to colorability or bad faith, the court must still make both findings with a high degree of specificity. See id., 848 n.8.

"Colorability is measured by an objective standard, whereas bad faith is measured by a subjective one. Colorability focuses on the merits of the claim. A colorable claim is defined as one that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law). Black's Law Dictionary (9th Ed. 2009) p. 282. Put another way, a claim is colorable if, given the facts presented and the current law (or a reasonable extension thereof), the claim arguably has merit. . . .

"A determination of bad faith, by contrast, rather than focusing on the objective, reasonable beliefs of the person against whom sanctions are sought, focuses on subjective intent. We have emphasized that, in determining whether a party has engaged in bad faith, [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. . . . From that conduct, the court may infer the subjective intent of the person against whom sanctions are sought. Some examples of evidence that would support a finding of bad faith include a party's use of oppressive tactics or its wilful violations of court orders . . . or a finding that the challenged actions [are taken] for reasons of harassment or delay or for other improper

purposes . . . . When . . . the claim that an individual has brought or maintained an action in bad faith is predicated on the individual's personal knowledge that there is no factual support for the claim or claims at issue, in order to infer that the individual acted in bad faith, the court must make a finding that the individual knew of the absence of that factual basis." (Citations omitted; internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 332 Conn. 845–46.

In the present case, a review of the trial court's memorandum of decision awarding the defendant attorney's fees shows that the court relied exclusively on certain findings that Judge Adelman made in his memorandum of decision rendering judgment for the defendant in the plaintiff's underlying breach of contract action. The court explained that, "[i]n the civil court's decision on the underlying matter, Judge Adelman made specific findings. The trial court held that the two annuity contracts at issue had been liquidated prior to the divorce in order to fund the construction of [the defendant's] new home and the amounts of that liquidation were reflected in the assets reported on her financial affidavit. The trial court further found: 'The funding and construction of said home was done with the knowledge of the plaintiff . . . and he provided significant funds to the defendant for that project including, but not limited to, the two annuity contracts in question.' " On the basis of these findings, the court concluded that "[the plaintiff] had no colorable claim on which to premise his civil lawsuit and [Judge Adelman] so found."

We must therefore determine whether Judge Adelman's findings in the underlying breach of contract action were sufficient to justify the award of attorney's fees in this case.

Judge Adelman's memorandum of decision stated in relevant part: "[T]he court makes the following findings of fact . . .

\* \* \*

"F. The provisions of [the] agreement are, in parts, contradictory and ambiguous . . .

"H. The defendant did not own the two annuity contracts in question as of the date of her financial affidavit filed at the final hearing in that said contracts had been previously liquidated by the defendant to fund, in part, her new home . . .

"I. The funding and construction of said home was done with the knowledge of the plaintiff and he provided significant funds to the defendant for that project including, but not limited to, the two annuity contracts in question;

"J. There was no failure to disclose any assets by either party;

"K. There is insufficient evidence to make a finding

as to the breach of the contract on the part of the defendant;

"L. The defendant's special defenses number[ed] two through five were abandoned by the defendant and the court makes no further findings as to those special defenses . . . ."

We conclude that Judge Adelman's memorandum of decision did not include sufficiently specific factual findings to support an award of attorney's fees under the bad faith exception to the American rule. First, Judge Adelman made no express findings that the plaintiff's contract claim lacked color or that the plaintiff knew that there was no factual basis for his claim or otherwise acted in bad faith. Judge Adelman observed that the relevant provisions of the agreement were "in parts, contradictory and ambiguous," stating that "[t]he fact that there are two provisions that might lead to two separate interpretations of the contract is sufficient proof that there is an ambiguity in the contract." In the absence of any specific finding that the plaintiff's claims lacked color and that the plaintiff acted in bad faith, Judge Adelman's observation that the contract language was ambiguous (and therefore had more than one possible interpretation) suggests that the plaintiff's claim had at least some color, rather than a complete lack of color. See *Lederle* v. *Spivey*, supra, 332 Conn. 845 ("a claim is colorable if, given the facts presented and the current law (or a reasonable extension thereof), the claim arguably has merit").

Second, although Judge Adelman found that the defendant did not own the two annuity contracts in question when she filed her final financial affidavit because she had liquidated them to fund, in part, her new home and further found that "[t]he funding and construction of said home was done with the knowledge of the plaintiff and he provided significant funds to the defendant for that project including, but not limited to, the two annuity contracts in question," those findings alone do not equate to a finding that the plaintiff's claims were without color and that he knew there was no factual basis for his claim or otherwise acted in bad faith. In particular, the finding that the home was funded and constructed with the plaintiff's knowledge is ambiguous with respect to whether or when the plaintiff became aware that the annuities had been liquidated and used to fund the construction of the home. Moreover, Judge Adelman's decision is silent with respect to whether and when the plaintiff knew that the defendant had properly disclosed the amounts of the liquidated annuities by including those amounts in the value of the real estate she disclosed in her financial affidavit.[5]

Because Judge Adelman's memorandum of decision in the underlying breach of contract action did not include the requisite factual findings for an award of attorney's fees under the bad faith exception, Judge

Epstein was required at least to review the record from those proceedings and make her own factual findings, with the requisite degree of specificity, as to the relevant issues.[6] In doing so, the court also was required to point to clear evidence in the record to support its findings that the plaintiff lacked a colorable claim and acted in bad faith, explaining the connection between the evidence and its conclusions. See *Cokic* v. *Fiore Powersports, LLC*, supra, 222 Conn. App. 227 ("we have declined to uphold awards under the [bad faith] exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes" (emphasis omitted; internal quotation marks omitted)). Conclusory statements that the plaintiff lacked a colorable claim or acted in bad faith are not sufficient to meet the high threshold required under our law. Because the court instead relied exclusively on Judge Adelman's findings, which were insufficient to support an award under the bad faith exception, we conclude that the court abused its discretion in awarding the defendant attorney's fees.

Having determined that the court abused its discretion, we must now decide whether the case should be remanded for a new hearing or with direction that the motion for attorney's fees be denied. "Our resolution of this question turns on whether the defendant, having been given an opportunity to do so, presented sufficient evidence of the plaintiff's lack of a colorable claim and . . . bad faith to support the required findings." Id., 231. On the basis of our review of the record, we conclude that the defendant's motion for attorney's fees included references to specific evidence in the record, including the plaintiff's testimony, in support of her claim that the plaintiff's breach of contract claim lacked color and was brought in bad faith. The court, however, failed to review that evidence and instead relied exclusively on Judge Adelman's findings in the underlying breach of contract action. As a result, and unlike the defendant in *Cokic*, the defendant, through no fault of her own, was deprived of a full and fair opportunity to present and have the court consider evidence of the plaintiff's bad faith. We therefore remand this case for a new hearing. Compare *Puff* v. *Puff*, 334 Conn. 341, 372–73, 222 A.3d 493 (2020) (new hearing on motion for sanctions was required because defendant alleged facts in support of findings of bad faith and lack of colorability, but court failed to make specific findings), with *Cokic* v. *Fiore Powersports, LLC*, supra, 222 Conn. App. 231–32 ("Having reviewed the record, we conclude that the defendant failed to present any evidence that the plaintiff lacked a colorable claim against it and that his pursuit of his claims was undertaken in bad faith. Therefore, a new hearing on the defendant's motion for attorney's fees is not warranted in the present case.").

The judgment is reversed and the case is remanded

for a new hearing on the defendant's motion for attorney's fees.

In this opinion the other judges concurred.

[1] "Pursuant to the American rule, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable [attorney's] fee from the loser." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 332 Conn. 837, 839 n.2, 213 A.3d 481 (2019). Our Supreme Court, however, has "recognized a 'bad faith' exception to the American rule, which permits a court to award attorney's fees to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney." *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004).

[2] The plaintiff also claims that the court erred in determining the amount of attorney's fees to award in the absence of sufficient evidence to support that amount. Because we determine that the court did not make the necessary findings to satisfy the bad faith exception in order to make an award of attorney's fees in the first instance, we do not address this additional claim.

[3] Although § 46b-62 has been amended since the filing of the motion for attorney's fees; see Public Acts 2021, No. 21-15, § 115; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] The plaintiff filed his original appeal on January 18, 2022, challenging the court's November 5, 2021 decision granting the defendant's postjudgment motion for attorney's fees. At the time the original appeal was filed, the court had not yet determined the amount of attorney's fees. On May 4, 2022, this court issued an order requiring the parties to submit memoranda on why the plaintiff's appeal should not be dismissed for lack of a final judgment because the trial court had yet to determine the amount of attorney's fees. On May 26, 2022, this court issued another order indicating "that resolution of the jurisdictional issue raised in the court's motion to dismiss [would be] deferred to the panel considering the merits of the appeal and without prejudice to this court considering any subsequent developments in the trial court or the filing of an amended appeal." Because the plaintiff amended the appeal after the trial court rendered judgment on the amount of attorney's fees, the amended appeal is taken from a final judgment and is therefore jurisdictionally proper. See *Paranteau* v. *DeVita*, 208 Conn. 515, 524 n.11, 544 A.2d 634 (1988); see also Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, any amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed").

[5] It is not surprising, of course, that Judge Adelman's decision lacks the requisite findings because the issue of attorney's fees was not before him when he rendered judgment in favor of the defendant.

[6] Of course, the burden is on the moving party to provide the court with a sufficient record and to point to the areas in the record that would support a finding of lack of color and bad faith. See *Cokic* v. *Fiore Powersports*, *LLC*, supra, 222 Conn. App. 229. A court in such a situation also may conclude that an evidentiary hearing is required. See id., 229–31.